WHITE v. THOMAS EGAN'S SONS

(May 29, 1929. Opinion and Decree.)

W. A. Green and H. W. Robinson, of New Orleans, attorneys for plaintiff, appellant.

Milner and Porteous and P. M. Milner, of New Orleans, attorneys for defendant, appellee.

JONES, J. Plaintiff sues for $21,116.50 damages, alleged to have been caused in an automobile accident at the intersection of Carondelet and Julia Streets on August 30, 1923, about 10:30 p. m. The petition recites that plaintiff's 7-passenger Buick car, in which he was sitting on the right rear seat, had almost crossed the downtown side of the intersection of Carondelet and Julia Streets, when a wagon, drawn by a double team of horses, owned by defendant and used as a mail wagon, empty and en route to the stable, driven by defendant's employee, a negro named Henry Washington, ran its tongue into the rear of petitioner's car, struck petitioner with terrific force on the right jaw, fractured his jaw and caused extensive minor injuries, some of which are of a permanent nature. The charge of negligence is that the mail wagon failed to stop or slow down at the intersection, in violation of the traffic ordinance, and that it was crossing the street too rapidly.

The answer denies all essential allegations and avers that an unknown automobile, driven at great speed, ran into the tongue of the mail wagon, striking it a side blow and continued on, without stopping.

Respondent denies that its driver was guilty of any negligence, but avers that if he was, then the driver of plaintiff's automobile was guilty of gross negligence in driving at a high rate of speed in violation of the city ordinance and that he entered the crossing after he saw the heavy mail wagon was already there and recklessly tried to beat it across.

There was judgment for defendant, based on the verdict of a jury, and plaintiff has appealed.

The only question is one of fact.

Though there were many collateral issues raised on the trial of the case, and though the voluminous evidence on these issues, taken as a whole, tends to discredit plaintiff's contentions, we prefer to decide the case squarely on the question of plaintiff's negligence and to put aside all collateral issues. As the issue is narrow and the case very close, we will analyze briefly the evidence as to how the collision occurred.

The record shows that the 7-passenger Buick owned by plaintiff was driven by A. Sternberger, who worked for petitioner as a real estate agent. On the driver's right was seated William B. Miller, another real estate agent, who worked for plaintiff, and on the rear seat, behind the driver, was Mrs. Gouner, another employee of plain-

tiff, while plaintiff occupied the right rear seat.

Sternberger, the driver, who should know more than anybody else about the distances and speeds just prior to the collision, testifies that he saw defendant's mail wagon 100 to 150 feet down Julia Street when he reached the intersection; that he thought he had ample time to complete the crossing and therefore allowed his motor to roll slowly along; that the tongue of the mail wagon ran into the back of his car when its front end was already one-fourth past the downtown sidewalk of Julia Street.

If his automobile was traveling at a rate of ten miles per hour, which is certainly an unusually low rate for anyone to travel in that section of the city at that hour of the evening—or in fact, at any other time—it would have crossed Julia Street in about three seconds. A heavy mail wagon, weighing over 3,000 pounds, with two horses, each weighing over 1,200 pounds, even if they were trotting rapidly, could not have possibly been making over fifteen miles per hour, or twenty-two feet per second. Thus, during the three seconds consumed by the Buick in crossing Julia Street, the wagon, going at its fastest possible speed, could have only gone sixty-six feet, which would have placed it at least thirty-four feet from the intersection when the Buick finished the crossing.

It is thus seen that, even by slowing down the auto to the lowest speed, and speeding up the wagon to the fastest, the statement of plaintiff's driver and chief witness is physically impossible. Plaintiff says that he did not see the wagon at all. Mrs. Gouner says that plaintiff's auto was going not over fifteen miles an hour, while the horses were going very fast, but she did not see the wagon until the front of the car had passed it.

Miller says he did not see the wagon until the crash came, though he was on the side next to Mrs. Gouner. It seems strange that none of the occupants of the automobile except the driver should have seen a large mail wagon if it were in such close proximity to the slow-moving automobile, as there was a street light on the corner.

Mrs. Sanchez, a witness for plaintiff, who lives on the downtown river corner of Carondelet and Julia Streets, testifies that she was sitting on her side steps, about fifteen or twenty feet from the corner and that she saw the mail wagon, going pretty fast, enter Carondelet Street without stopping. She also saw the automobile, coming down Carondelet Street slowly—not over fifteen miles an hour—reach the intersection while the wagon on the downtown side of Julia Street was still out beyond her house towards the river; the automobile was on the right side of Carondelet Street and the wagon on the downtown side of Julia; that neither one stopped and the two vehicles collided just below the middle of the intersection; then the automobile slowed down, but did not stop and the driver pulled his horses back. On cross-examination she refused to say that the wagon was going faster than the automobile. This witness confirms Sternberger as to the auto entering the intersection while the wagon was still out on Julia Street, but she does not fix the exact distance of the wagon from Carondelet at the moment the auto entered the intersection. But as she says the automobile was going slowly—not more than fifteen miles an hour—and as the wagon could hardly have been going that fast, we are at a loss to understand how the auto could have slowed down much without stopping, and how the two vehicles could collide just below the center of Julia Street, unless the wagon was

going faster than the auto, a statement this witness would not make.

Washington, the driver of the wagon, says that he was going out Julia Street toward the lake in a trot at his usual speed, about five miles per hour, until he reached the middle of the block, when he slowed down to about two miles an hour and entered Carondelet Street in a walk; that he did not hear any horn and did not see any auto until the Buick· was within twelve feet of him on his left, going at a fast speed, about forty-five miles per hour; that the auto, then swerved first to the left and then to the right; that he stopped his wagon when his horses were about at the first track on Carondelet Street and swung them towards Canal Street to the right, but the right rear side of the auto ran into the end of the wagon's pole, hitting it a sort of a side-swipe.

As the city traffic ordinance requires this wagon to come to a stop before entering Carondelet, the driver's statement clearly shows that he was guilty of negligence. However, defendant's negligence was not the proximate cause of the accident. Had Sternberger been driving his car at a legal speed, under proper control, and had he been looking ahead, as required by the city ordinance, he certainly would have seen the mail wagon in time to avoid the collision.

As we find no manifest error in the decision of the lower court, the judgment is affirmed.